# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **MELANIE JONES,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| vs. | ) Case No. CV-12-S-195-J |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Melanie Jones, commenced this action on January 18, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by

substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered her use of an assistive device, and that he failed to give appropriate weight to the opinion of her treating physician. Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

First, claimant argues that the ALJ erred in evaluating her use of a cane to assist in ambulation.[1] Claimant acknowledged during the administrative hearing that no physician had officially prescribed the use of a cane, but she nonetheless testified that Dr. Ellen McFadden, her treating physician, had orally recommended that claimant use a cane if she was feeling out of balance.[2] Claimant later testified that the most she could walk without using her cane was the length of her house.[3] The ALJ acknowledged this testimony in his administrative decision, stating, "She testified that she has problems with standing and walking such that she uses a cane, but it is not prescribed. . . . She testified that she could walk a short distance, about the length of her house, without assistance . . . ."[4]

---

[1] Claimant does not spell out why she thinks this alleged error would change the administrative result. Presumably, it is because the required use of an assistive device to ambulate would be inconsistent with the ALJ's residual functional capacity finding that claimant could occasionally climb stairs and ramps, stoop, kneel, and do bilateral lower extremity pedal operation. *See* Tr. 21.

[2] Tr. 81.
[3] Tr. 93.
[4] Tr. 22.

According to claimant, the ALJ's "rejection" of her medical need for a cane is inconsistent with the Commissioner's statements in Social Security Ruling 96-9p.[5] That Ruling addresses the implications of a residual functional capacity for less than a full range of sedentary work on a claimant's capability to do other work. In the part of the Ruling relied upon by claimant, the Commissioner stated:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p. Claimant asserts that the ALJ improperly considered whether she had a *prescription* for the cane, when the relevant inquiry actually is whether there is *any* medical documentation of her need for the device. The court is not persuaded by claimant's argument. As an initial matter, the court does not see any material difference between the ALJ discussing a prescription and him discussing some other type of medical documentation. Furthermore, even if the ALJ's mention of a prescription was error, it was harmless, as there is no other medical documentation of claimant's need for an assistive device in the record. Claimant has offered only her

---

[5] *See* doc. no. 9 (claimant's brief), at 10.

own testimony that Dr. McFadden orally suggested that she use the cane, but there is no authority to suggest that such testimony is sufficient to medically establish the need for a cane or other assistive device.

Claimant suggests that the ALJ "should have developed the record further or contacted the claimant's treating physician to find out whether the claimant's use of a cane is in fact medically required."[6]  It is true that the ALJ "has an obligation to develop a full and fair record, even if the claimant is represented by counsel." *Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).  Despite that fact, a claimant always bears the ultimate burden of producing evidence to support her disability claim.  *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)).  Thus, in discussing whether an ALJ should have ordered an additional consultative examination, the Eleventh Circuit has stated that the

> ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision*. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation,* 153 F. App'x at 598 (emphasis supplied).  Similar principles apply here.

---

[6] *Id.* at 11.

4

There is no indication that the record was insufficient, or that the ALJ did not have enough information to make an informed decision. It is not true, as claimant suggests, that "[t]he medical evidence regarding the plaintiff's need for a cane in this case is unclear."[7]  Instead, the record simply does not contain the evidence claimant would like for it to contain, despite the fact that she was represented by counsel and had the opportunity to produce such evidence if it existed. There was no reason for the ALJ to seek additional evidence about claimant's need for a cane.

Claimant's final contention is that the ALJ erred in considering the opinion of Dr. McFadden. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to

---

[7] *Id.* (alteration supplied).

give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. McFadden completed a Functional Assessment (Physical) form on March 1, 2010. She indicated that claimant could stand for ten to fifteen minutes at a time, and for a total of three hours during an eight-hour work day. She could walk for a total of two hours and sit for a total of three hours during an eight-hour work day. Dr. McFadden noted that claimant was unable to maintain a constant position during the twenty-minute examination. Claimant would not need a sit-stand option at work, but she would need to lie down for approximately fifteen to twenty minutes every two hours. Claimant could frequently lift and carry up to five pounds and occasionally lift and carry up to ten pounds. She had no limit on her abilities to feel, talk, and hear, and she could frequently handle, but she could only occasionally push/pull with

all extremities, climb, balance, stoop, kneel, crouch, crawl, and reach. Claimant could occasionally be exposed to wetness, humidity, vibration, fumes, noxious odors, dusts, mists, gases, poor ventilation, and moving mechanical parts, but she should avoid all exposure to extreme heat and cold and working in high, exposed places. Claimant would have occasional problems with depth perception, but all other visual functions — including near acuity, far acuity, accommodation, color vision, and field vision — could be performed frequently. Claimant could be exposed to "very loud" noises. Dr. McFadden indicated that drug and/or alcohol use was not relevant to claimant's functional abilities.[8]

    Dr. McFadden also completed a Medical Assessment (Mental) form on the same date, March 1, 2010. She noted that claimant had mild impairment in her abilities to follow work rules, deal with the public, deal with work stresses, function independently, and maintain attention and concentration, and moderate impairment in her abilities to relate to co-workers, use judgment, and interact with a supervisor. Claimant would be capable of managing benefits in her own interest. She had moderate impairment in her ability to understand, remember, and carry out complex instructions; mild impairment in her ability to understand, remember, and carry out detailed, but not complex instructions; and no impairment in her ability to understand, remember, and carry out simple instructions. Claimant had no problem with

---

[8] Tr. 287-88.

maintaining her personal appearance, but she had mild impairment in her abilities to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Again, drugs and alcohol were not a factor in Dr. McFadden's assessment.[9]

Dr. McFadden completed a "Clinical Assessment of Fatigue/Weakness" form on January 13, 2010.[10] She indicated that fatigue/weakness was present to such an extent as to negatively affect adequate performance of daily activities or work, that physical activity would greatly increase claimant's fatigue/weakness to such a degree as to cause total abandonment of tasks, and that the side effects of claimant's prescribed medications could cause some side effects, but not to such a degree as to create serious problems in most instances.[11] Dr. McFadden also completed a Clinical Assessment of Pain form on March 1, 2010. She indicated that claimant experienced pain to an extent that would negatively affect the adequate performance of her daily activities, that physical activity would greatly increase her pain to such a degree as to cause distraction from or abandonment of tasks, that claimant's medical condition likely would cause her to be absent from work more than four times each month, and that claimant's prescribed medications would cause some limitations on claimant's

---

[9] Tr. 289-90.

[10] The date on the face of this form appears to be January 13, 2010, but the court wonders if that might be a mistake, considering that all of Dr. McFAdden's other forms were dated March 1, 2010.

[11] Tr. 291.

ability to perform work-related activities, but not to such a degree as to create serious problems in most instances. Dr. McFadden also circled the word "yes" in response to the question whether claimant's medical condition could reasonably be expected to produce the pain of which she complained.[12]

The ALJ accurately summarized Dr. McFadden's findings in his administrative decision, but he decided to give those findings no weight. He reasoned that the degree of limitation assessed by Dr. McFadden was not supported by Dr. McFadden's own records or the records of any other reviewing or examining physician, was based solely on claimant's subjective complaints, was inconsistent with the objective medical evidence of record, including x-rays and other diagnostic tests, and was inconsistent with claimant's reported activities of daily living.[13]

The court finds that the ALJ adequately articulated his reasons for rejecting Dr. McFadden's opinion, and that his conclusions were supported by substantial evidence. The results of x-ray testing performed on November 1, 2007 reflected no more than "mild" or "minimal" degenerative changes in any of claimant's joints.[14] Tests to detect rheumatoid arthritis and anti-nuclear antibodies were negative.[15] The record also supports the ALJ's assessment of claimant's daily activities,

---

[12] Tr. 285-86.
[13] Tr. 25.
[14] *See* Tr. 280-82.
[15] Tr. 219, 222.

demonstrating that she is the primary caregiver for four of children, two of whom have special needs. Moreover, the ALJ's decision was supported by the December 21, 2009 assessment of Dr. David Gordon, the consultative physical examiner. Dr. Gordon's examination findings were essentially normal, except for some abnormalities in claimant's musculoskeletal system. There was no apparent atrophy or deformity noted, and no erythema or swelling of any joint. Claimant demonstrated some tenderness to palpitation in the knees and middle spine and some crepitis on range of motion in her knees. Range of motion in her lumbar spine, hips, and knees was slightly limited. She had full grip strength and full flexion and extension of the hips and knees. Sensation was intact in all extremities, and straight leg raising tests were negative. Claimant had no problems hearing, speaking, sitting, standing or walking in the hallway, and she did not use an assistive device. She experienced no muscle spasms, and she could heel/toe walk and squat and rise at about fifty percent.[16] The ALJ afforded Dr. Gordon's assessment "considerable weight," reasoning that Dr. Gordon's findings were based on direct observation and examination of claimant, as well as an examination of her medical records, and that they were consistent with the other medical evidence of record.[17] The ALJ was entitled to give more weight to Dr. Gordon's opinion than Dr. McFadden's if he found it to be more reliable and more

---

[16] Tr. 265-71.
[17] Tr. 25.

consistent with the medical evidence of record, and the court finds that his decision to do so was supported by substantial evidence.

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 11th day of October, 2012.

_____
United States District Judge